UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia
(Richmond Division)

FILED

2016 JAN -5 P 2:28

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

A-T SOLUTIONS, INC.
10304 Spotsylvania Avenue, Suite 200
Fredericksburg, Virginia 22408

    Plaintiff,

v.

R3 STRATEGIC SUPPORT GROUP, INC.
1050 B Avenue, Suite A
Coronado, California 92118

    SERVE: Corporation Service Company
    Bank of America Center, 16th Floor
    1111 East Main Street
    Richmond, VA 23219

    Defendant.

Case No. 3:16cv7 JAG

## VERIFIED COMPLAINT

COMES NOW, Plaintiff A-T Solutions, Inc. ("A-T Solutions"), by the undersigned counsel, and for its Complaint states as follows:

### NATURE OF THE ACTION

1. This Action turns on the interpretation of unambiguous language in a Teaming Agreement (the "Teaming Agreement") between A-T Solutions and its teaming partner, R3 Strategic Support Group, Inc. ("R3").

### PARTIES

2. A-T Solutions is a Virginia stock corporation with its principal place of business at 10304 Spotsylvania Avenue, Suite 200, Fredericksburg, Virginia 22408. It is a recognized leader

specializing in training the military to thwart terrorist bombings.

3. R3 is a California stock corporation with its principal place of business located at 1050 B Avenue, Suite A, Coronado, California 92118. R3 is a service-disabled veteran-owned small business that provides strategic solutions across a broad spectrum of government and commercial domains. It is registered with the Virginia State Corporation Commission to, and regularly does, transact business in the Commonwealth of Virginia.

## VENUE AND JURISDICTION

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a)(2) because it involves citizens of different states and involves a dispute worth in excess of $75,000.00. Moreover, both A-T Solutions and R3 agreed that exclusive jurisdiction and venue for any and all actions or proceedings related to the Agreement shall lie in the state or federal courts located in the Commonwealth of Virginia.

5. Venue is proper pursuant to 28 U.S.C. § 1392(b)(2) because the relevant events occurred in this Court's jurisdictional boundaries.

### Facts Common to All Counts

6. On May 11, 2015, A-T Solutions entered a Teaming Agreement with R3, a true and correct copy of which is attached hereto as Exhibit 1, with the exclusive purpose of pursuing general opportunities in relation to a government contract for a program known as the Combined Explosive Exploitation Cell (the "CEXC Program"). Specifically, the parties stated they intended to

> pursue general opportunities in relation to a solicitation, RFP, BAA, contract or other opportunity known as the Combined Explosive Exploitation Cell (CEXC) program, including any and all modifications or amendments thereto and any and all new opportunities agreed to be subject to this Agreement (hereinafter referred to as the "Program").

Ex. 1 at 1.

2

7. The CEXC Program involves a contract to provide personnel and support for explosive ordnance disposal. The U.S. Government intends to award a base year contract with four option years under the CEXC Program. The CEXC Program contract has a total estimated value of $50,000,000.00 to the awardee.

8. Paragraph 2(a) of the Teaming Agreement provided that neither A-T Solutions nor R3 would:

> participate in any manner or undertake any efforts in support of any other teaming efforts that are competitive to this Teaming Agreement and will not compete independently with regard to this Teaming Agreement, including but not limited to, the independent submission of a proposal or joint submission with any other party to the Program.

9. Because both A-T Solutions and R3 anticipated the need to share proprietary information in order to fulfill the Teaming Agreement's purpose, they further agreed that during the term of the Teaming Agreement, and for three (3) years thereafter, neither party would make any reproduction, disclosure, or use of Proprietary Information, except as required in performing obligations under the Teaming Agreement, without the written authorization of the disclosing party ("the Non-Disclosure Provision"). Ex. 1 at para. 9

10. In recognition of the inherent value to such proprietary information, A-T Solutions and R3 acknowledged in the Teaming Agreement that any breach of the Nondisclosure Provision would not be susceptible to being compensated by money damages. As a result, they each acknowledged that injunctive relief should be available to the aggrieved party in the event of a breach of this provision. Ex. 1 at para. 9(h).

11. Upon the execution of the Teaming Agreement, A-T Solutions provided R3 with its proprietary information including, but not limited to, confidential and proprietary pricing information as well as its fully burdened labor rates with and without anticipated profit margins.

12. On June 16, 2015, the Naval Surface Warfare Center Indian Head Explosive Ordnance Disposal Technology Division ("NSWC IHEODTD") issued solicitation number N00024-15-R-3353, seeking bids from qualified government contractors to provide support for the CEXC Program ("the CEXC Program Solicitation").

13. A-T Solutions prepared a competitive bid in response to the CEXC Program Solicitation. In preparing that bid, it relied upon R3's commitment to team with A-T Solutions pursuant to the Teaming Agreement.

14. On July 17, 2015, NSWC IHEODTD issued amendment 3 to the CEXC Program Solicitation. Its purpose was "to cancel the solicitation in its entirety to allow for a reassessment of the mission requirements and revisions to solicitation-related document [sic]." Within amendment 3 the government expressly affirmed its intent "to re-solicit [the CEXC Program] in the first quarter of fiscal year 2016."

15. In fact, on December 10, 2015, NSWC IHEODTD issued solicitation number N00024-15-R-3584, which "replace[d] previously cancelled solicitation N0024-15-R-3353, which was cancelled on 17 July 2015 in order to allow a reassessment of the mission requirements and revisions to solicitation-related documents." ("the Renewed CEXC Program Solicitation") Contract bids must be submitted under this solicitation not later than January 11, 2016.

16. Upon receiving the Renewed CEXC Program Solicitation, A-T Solutions contacted R3 to prepare a new submission for the CEXC Program. R3 responded via email asserting that "[b]ased upon the cancellation of the solicitation in July on which our teaming agreement was based, a valid agreement between [A-T Solutions] and R3 does not exist."

17. The Teaming Agreement is not, however, dependent upon or tied to a particular solicitation. Rather, the parties expressed their intent in the Teaming Agreement to:

4

pursue general opportunities in relation to a solicitation, RFP, BAA, contract or other opportunity known as the Combined Explosive Exploitation Cell (CEXC) program, including any and all modifications or amendments thereto and any and all new opportunities agreed to be subject to this Agreement (hereinafter referred to as the "Program").

18. That the Teaming Agreement was not dependent upon or tied to a particular solicitation is reinforced by the express language of para. 18 which provided that R3 "will team exclusively with [A-T Solutions] for the Program identified in this Agreement during the Term hereof."

19. R3 has implied that it has either reached an agreement to team with one of A-T Solution's competitors or intends to do so for the purposes of competing for the CEXC Program contract.

20. Because A-T Solutions is the incumbent performing under the existing CEXC Program contract, there is a high likelihood that A-T Solutions will successfully re-compete for the new contract, so long as it has the right personnel with sufficient expertise to satisfy the Program's requirements. A-T Solutions teamed with R3 in the first instance because R3 offers significant technical expertise and capability that is uniquely relevant to the CEXC Program contract.

21. As of the filing of the instant Complaint, R3 continues to refuse to comply with its obligations under the Teaming Agreement. Its continued breach has caused and will continue to cause irreparable harm to A-T Solutions because, without injunctive relief, A-T Solutions' ability to submit a competitive bid for the $50,000,000.00 CEXC Program contract in response to the Renewed CEXC Program Solicitation is significantly jeopardized.

22. Public policy unambiguously supports injunctive relief in this case. R3, and other companies, should be required to abide by the agreements they make and not ignore or violate them for their own purposes. Further, public policy is served by having qualified entities compete for government contracts.

23. All that A-T Solutions seeks is the right to have its agreement with R3 enforced.

**CAUSES OF ACTION**

## COUNT I
## (BREACH OF CONTRACT)

24. A-T Solutions re-alleges and incorporates the allegations of all preceding paragraphs as if fully stated herein.

25. The Teaming Agreement is a valid and enforceable contract between AT and R3. It contains legally enforceable obligations exchanged between A-T Solutions and R3, and it is supported by sufficient consideration.

26. R3 breached its agreement with A-T Solutions by repudiating its teaming obligations and refusing to participate in a bid submission for the CEXC Program in response to the Renewed CEXC Program Solicitation.

27. Further, R3 has breached its agreement, or anticipates doing so, by teaming with one of A-T Solutions' competitors to compete for the CEXC Program. Should R3 team with a competitor, R3 would likely disclose A-T Solutions' proprietary information to its new partner.

28. As a direct and proximate result of A-T Solutions' wrongful actions, A-T Solutions has been denied its contract rights pursuant to the Teaming Agreement and there is a real threat that R3 will continue to violate A-T Solutions' rights into the future.

29. Per Paragraph 9(h) of the Teaming Agreement, this Court may enforce the agreement by injunction or other equitable relief deemed necessary to prevent the disclosure of A-T Solutions' proprietary information.

## COUNT II
## (MISAPPROPRIATION OF TRADE SECRETS)

30. A-T Solutions re-alleges and incorporates the allegations of all preceding paragraphs as if fully stated herein.

31. In reliance upon the Nondisclosure Provisions of the Teaming Agreement, A-T Solutions

disclosed confidential proprietary information and trade secrets to R3.

32. Among the trade secrets revealed were fully burdened labor rates (both with and without profit margins), and pricing strategies.

33. A-T Solutions derives independent economic value by keeping this information secret because it enhances the company's competitive market position vis-à-vis competitors.

34. A-T Solutions takes steps to protect its proprietary information and trade secrets from disclosure. Among the steps taken, it negotiated an express Non-disclosure Provision into the Teaming Agreement. This provision is intended to protect such confidential proprietary information and trade secrets from disclosure.

35. Having received A-T Solutions' confidential proprietary information and trade secrets in the context of preparing a competitive bid for the CEXC Program, R3 would necessarily utilize that information in preparing a bid with another partner.

36. Should R3 reveal A-T Solutions' confidential proprietary information and trade secrets to a competitor, as threatened by it's teaming with a competitor, the disclosure would cause an immediate and irreparable injury to A-T Solutions in the form of undermining its competitive position vis-à-vis the CEXC Program.

37. Any revelation of A-T Solutions' confidential proprietary information and trade secrets by R3 would constitute a breach of the Teaming Agreement and of the Virginia Uniform Trade Secrets Act (Virginia Code § 59.1-336).

38. Per Paragraph 9(h) of the Teaming Agreement, this Court may enforce the agreement by injunction or other equitable relief deemed necessary to prevent the disclosure of A-T Solutions' proprietary information and trade secrets.

39. Virginia law also empowers this Court to award injunctive relief to protect A-T

Solutions' confidential proprietary information and trade secrets from either actual or threatened disclosure (Virginia Code § 59.1-337).

## COUNT III
## (PRELIMINARY AND PERMANENT INJUNCTION)

40. A-T Solutions re-alleges and incorporates the allegations of all preceding paragraphs as if fully stated herein.

41. Absent judicial intervention, A-T Solutions will suffer irreparable harm.

42. The harm that A-T Solutions will suffer if injunctive relief is not provided outweighs the harm to R3 if the injunction is granted. The Teaming Agreement is very valuable for A-T Solutions and constitutes a significant opportunity to maintain a significant source of A-T Solutions' revenue. If the request is denied, A-T Solutions will suffer significant, irreparable harm including the loss of substantial revenue. Calculating such damages in monetary terms, however, is difficult because A-T Solutions must first compete and win the CEXC Program contract. R3's continued breach makes A-T Solutions' winning of the contract less certain.

43. By comparison, R3 will suffer no harm. Instead, R3 will be required to perform in accordance with the Teaming Agreement. Indeed, the relief sought simply would enjoin wrongful actions and return the parties to the status quo before R3 breached the Teaming Agreement. Therefore, granting A-T Solutions' request for relief will not in any way affect the current performance obligations.

44. Based upon R3's continued breach of the Teaming Agreement, A-T Solutions has no adequate remedy at law and will suffer irreparable harm, including the lost opportunity to compete fully and fairly for award of the CEXC Program, and potentially the loss of the contract all together if R3 is permitted to enter or perform under a teaming agreement with a third party.

45. Based upon A-T Solutions likelihood of success on the merits, the fact that the harm to

A-T Solutions will substantially outweigh any harm to R3, and the public interest in the protection of trade secrets, fair dealing, and the solemnity of contracts, A-T Solutions has satisfied the prerequisites for injunctive relief.

46. Therefore a preliminary and/or permanent injunction is necessary to remedy R3's breaches of the Teaming Agreement, and to prevent R3 from entering into a teaming agreement or otherwise performing services in connection with the CEXC Program, and requiring R3 to perform in accordance with the Teaming Agreement.

## REQUESTED RELIEF

WHEREFORE, Plaintiff A-T Solutions, Inc. prays for judgment against Defendant R3 Strategic Group, Inc., as follows:

A. An order of specific performance directing R3 to comply with the terms of its agreement with A-T Solutions, to wit, the Teaming Agreement related to the CEXC Program;

B. In the alternative, granting preliminary and permanent injunctive relief enjoining R3 from teaming with any other entity to compete for the CEXC Program;

C. Preliminary and permanent injunctive relief enjoining R3 from reproducing, disclosing, or otherwise using A-T Solutions' proprietary information disclosed pursuant to the Teaming Agreement for any purpose; and

D. Any further relief as the Court deems just and equitable under the circumstances.

Dated: January 5, 2016

Respectfully submitted,

_____
Bernard J. DiMuro, Esq.
VSB No. 18784
Billy B. Ruhling, II, Esq.
VSB No. 45822
**DiMuroGinsberg, P.C.**
*Counsel for A-T Solutions, Inc.*
1101 King Street, Suite 610
Alexandria, Virginia 22314-2956
Tel: (703) 684-4333
Fax: (703) 548-3181
Emails: bdimuro@dimuro.com
         bruhling@dimuro.com

## VERIFICATION

I, Justin Kees, hereby verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date: January 5, 2016        By: _____
                                Justin Kees
                                Vice President, A-T Solutions, Inc.